[No. 32945-6-I.   Division One.   May 1, 1995.]

THE CITY OF MOUNT VERNON, *Petitioner*, v. MIGUEL ANGEL QUEZADA-AVILA, *Respondent*.

---

[2]Hence, no further evidentiary hearing is necessary. *Cf. State v. Marks*, 114 Wn.2d 724, 736, 790 P.2d 138 (1990).

*James Nelson, Prosecuting Attorney,* for petitioner.

*Kern Cleven* and *Bruce Brown* of *Society of Counsel Representing Accused Persons,* for respondent.

BAKER, C.J. — The City of Mount Vernon appeals from a RALJ[1] decision reversing Miguel Quezada-Avila's conviction for being in physical control of a motor vehicle while intoxicated, RCW 46.61.504. The City contends the Superior Court erred in concluding that the Municipal Court had erroneously refused two of Quezada-Avila's requested jury instructions. We reverse the Superior Court and reinstate the conviction because the trial court's refusal to give the requested instructions did not prejudice Quezada-Avila.

> [Quezada-Avila] was observed asleep in the driver's seat of a vehicle that appeared to be high centered on the curb with the back end sticking onto the lane of traffic. The wheels on [the] right side of the car had apparently run over the curb. The car had continued to travel about 80 feet with the underside of the vehicle scraping along the cement curb.

---

[1] Rules for Appeal of Decisions of Courts of Limited Jurisdiction. RALJ 11.9.

> It was conceded by [Quezada-Avila] that he was intoxicated. The keys to the vehicle were in the ignition. [Quezada-Avila] denied driving.

Clerk's Papers, at 109 (RALJ Decision and Order).

A man found in the passenger seat, Mr. Alvarez, testified that a third man had been driving and had swerved to avoid an oncoming car. According to Alvarez, after the car came to rest on the curb the driver went to get help but did not return. Both right-side tires were flat and the car could not be driven. Quezada-Avila got into the driver's seat while Alvarez sat in the passenger seat. The men talked and then fell asleep.

The trial court gave the following instruction:

> A person is in physical control of a vehicle when that person has the ability to manage a vehicle which is reasonably capable of being made operable, or that person is in a position to regulate the movement of such a vehicle.

The trial court refused Quezada-Avila's requested instructions:

> Where circumstantial evidence permits a legitimate inference that the car was where it was because of the defendant's choice, it follows that the defendant was in actual physical control.

and

> In determining whether a person is in actual physical control of a vehicle, the focus should be on the status of the occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place where the police found it.

The language of these requested instructions was taken from *State v. Smelter*, 36 Wn. App. 439, 444-45, 674 P.2d 690 (1984).

In closing, the prosecutor argued that a person is in physical control of a vehicle if the vehicle is reasonably capable of being made operable. The prosecutor attacked Quezada-Avila's story that someone else had been driving and suggested that Quezada-Avila drove the vehicle off the road because he was drunk. Ultimately, the prosecutor argued, it was not necessary to determine whether Quezada-Avila was driving because he was in control of a vehicle which could be made operable.

Quezada-Avila was found guilty. The Superior Court reversed, again borrowing from *Smelter*, 36 Wn. App. at 444-45:

> In cases where operability of the vehicle [is] in question, the jury should be instructed that the focus as regards the degree of operability should not be narrowly drawn upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which by virtue of its inoperability it can no longer move.

Clerk's Papers, at 110. The City appeals.

This appeal requires us to revisit the troublesome issue of whether, and under what circumstances, a person may be guilty of physical control of an inoperable vehicle. In *Smelter* the defendant was found behind the wheel of a vehicle which had run out of gas. The defendant argued that he was not in physical control of the vehicle because he was unable to move it. The trial court found that the defendant's vehicle was reasonably capable of being operated, and found the defendant guilty. *Smelter*, 36 Wn. App. at 440. Affirming the conviction on different grounds, this court determined that physical control of an inoperable vehicle would support a conviction in certain circumstances.

> The focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move. *Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control.* To hold otherwise could conceivably allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution.

(Italics ours.) *Smelter*, 36 Wn. App. at 444-45. The emphasized passage extends the possible bases for a conviction of physical control beyond the ordinary fact pattern where the defendant is found in control of a motionless but immediately operable vehicle. The court's comment which precedes this passage is admittedly confusing. Nevertheless, the court *held* that the conviction was properly based on the fact that

the defendant drove the vehicle until it ran out of gas. *Smelter*, 36 Wn. App. at 445. The holding was compelled by the court's efforts to avoid a definition of physical control which would "allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution". *Smelter*, 36 Wn. App. at 445. The curious extension of physical control sanctioned by *Smelter* is only necessary where the prosecutor decides to charge a defendant with physical control instead of driving while intoxicated (DWI), RCW 46.61.502. We can perceive no set of facts which would support a conviction for physical control of an inoperable vehicle under *Smelter* which would not also support a charge of DWI. How it became customary practice to charge only physical control in such cases is unclear.

■ Assuming, without deciding, that a charge of physical control must otherwise be based on control of an operable vehicle or a vehicle which can reasonably be made operable,[2] *Smelter* provides an alternative basis on which a defendant may be convicted of physical control. First, the trier of fact should determine whether the vehicle was operable or could reasonably be made operable. The defendant would be guilty if he or she was in physical control of such a vehicle. Second, if the vehicle could not reasonably be made operable, the trier of fact would then determine whether the defendant was driving the vehicle when it became inoperable. If so, then the defendant would be guilty under *Smelter*. Quezada-Avila accepts this statement of the law.[3]

■ The instruction given by the trial court set out only one of these alternatives — the jury was permitted to con-

---

[2]The *Smelter* court purported to accept review for the purpose of deciding whether a vehicle must be operable to support a conviction for physical control. *Smelter*, 36 Wn. App. at 440. The *Smelter* opinion discusses but never decides this precise issue. Instead, the court decided a different issue, holding that in certain circumstances the vehicle need not be operable. *Smelter*, 36 Wn. App. at 445. Given the parties' agreement that a conviction required the vehicle to be reasonably capable of being made operable, we decline to decide the issue of operability in the present case.

[3]"Either there must be a reasonable inference that the defendant exerted some kind of authority over the vehicle prior to its becoming inoperable, *or* the

sider whether the vehicle was reasonably capable of being made operable. However, the instructions did not include the *Smelter* alternative and the jury was not instructed that it could base a finding of guilt on Quezada-Avila's earlier driving. That alternative would have been provided by Quezada-Avila's first requested instruction.[4] We would normally expect the prosecutor to request such an instruction, but here it was requested by the Defendant. The facts of the case would support such an instruction. However, because the only legal effect of the instruction was to broaden the possible bases for a conviction, the failure to give the instruction was clearly harmless.

▪ Quezada-Avila contends the instructions given by the trial court prevented him from arguing his case to the jury. We disagree. Instructions are sufficient if they permit each party to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. *State v. Allen*, 50 Wn. App. 412, 749 P.2d 702, *review denied*, 110 Wn.2d 1024 (1988). Quezada-Avila's defense theory was that he was not guilty because the vehicle was inoperable and he had not been driving it when it became inoperable. The court's instructions to the jury did not prevent him from making this argument. The jury was instructed that to convict Quezada-Avila it must find that the vehicle could be made operable. Under this instruction, Quezada-Avila could argue that the vehicle was not reasonably capable of being made operable, and that he did not drive the vehicle.

The instruction given by the trial court did not permit *either* party to argue whether Quezada-Avila's guilt could be based on his earlier driving, if the vehicle was in fact inoperable. Quezada-Avila is technically correct — the court's in-

---

vehicle must be reasonably capable of being rendered operable." (Italics ours.) Br. of Resp't, at 10.

[4]Quezada-Avila's second requested instruction adds nothing to the first. The language is taken out of context from the *Smelter* court's reasoning leading to the holding. The rule created by the *Smelter* holding is fairly stated in the first requested instruction.

structions did not present a complete statement of the law. However, Quezada-Avila could not have been prejudiced by the failure to give his requested instructions. It was not necessary for Quezada-Avila to argue that he had not been driving in the absence of an instruction which would allow a conviction to be based on a finding that he was. Both the instruction and the City's closing argument omitted the alternative basis for a conviction recognized in *Smelter*.

Quezada-Avila has not shown any prejudice caused by the failure to give his requested instructions.

Reversed.

WEBSTER and AGID, JJ., concur.

Reconsideration denied May 25, 1995.